**In re JAMES CALVIN BELK CONSTRUCTION CO., INC., Debtor.**

**Bankruptcy No. 79–20142.**

United States Bankruptcy Court,
N. D. Mississippi.

May 11, 1981.

---

2. Answer to complaint objecting to discharge, ¶ 12.

Holcomb, Dunbar, Connell, Merkel, Tollison & Khayat and Neblett, Bobo & Chapman, Clarksdale, Miss., for applicants; Charles M. Merkel, Rives Neblett and Fincher G. Bobo, Clarksdale, Miss., of counsel.

Wynn, Bogan & Mitchell, Eugene M. Bogan, Greenville, Miss., of counsel, for S. F. Kennedy New Products, Inc.

W. Allen Pepper, Jr., Cleveland, Miss., for Bank of Cleveland Branch of Grenada Bank, New Dixie Fasteners, Inc. and Valley Parts, Inc.

Levingston, Jacks, Levingston & Land, Jeffrey A. Levingston, Cleveland, Miss., of counsel, for Emmett McKnight, L. D. Walt, Kossman's, Inc., and Roy Collins Construction Corp., Inc.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

In February 1980 the Court authorized the debtor to employ the services of the law firm of Holcomb, Dunbar, Connell, Merkel, Tollison & Khayat and the law firm of Neblett, Bobo & Chapman to represent the debtor as the debtor's attorneys in a lawsuit then pending in the Fifteenth Judicial District Court for the Parish of Acadia, State of Louisiana. That suit had been brought against the debtor and Hunter Manufacturing, Inc. by Dick Johnson Grain Company, in which suit the debtor had asserted a cross-claim against Hunter Manufacturing, Inc. The plaintiff Johnson in that case had claimed a breach of contract and damages for redhibitory defects and vices in goods which had been sold by debtor to Hunter Manufacturing, Inc. and resold by it to Dick Johnson Grain Company. The debtor was originally represented in the suit by the Louisiana law firm of Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell of Lafayette, Louisiana, who were no longer willing to continue to represent the debtor without being paid a fee on a non-contingent basis.

The order which authorized the employment of the two Mississippi firms mentioned above specified that their compensation would be fixed at a later date on notice to creditors and other interested parties. The attorneys prepared the Louisiana case for trial and conducted that trial. When the trial had been almost concluded, a settlement agreement was reached under which the debtor was paid by Hunter Manufacturing the sum of $310,000.00 in cash and also received a return of equipment valued at $39,155.00. In addition, the Dick Johnson Grain Company released claims totalling $123,519.77, and claims of Hunter Manufacturing in the amount of $55,126.00 were also released. The Court approved this settlement after notice to creditors and other interested parties. The law firms involved in representing the debtor have since filed applications for allowance of fees and expenses and are claiming a fee based on

25% of the amount of the recovery, plus the amount of the released claims of the Johnson and Hunter companies. The total amount being sought by these attorneys is $131,950.00 in addition to out-of-pocket expenditures.

An evidentiary hearing on fee applications was held at which opposition to the fees was asserted on behalf of S. F. Kennedy New Products, a creditor, as well as by counsel representing in all eight additional creditors of the debtor.

Lead counsel for the debtor in the preparation and trial of the case was Mr. Charles Merkel of the Holcomb firm and he was assisted by Mr. Fincher Bobo of the firm of Neblett, Bobo & Chapman. Mr. Merkel logged 221 hours and Mr. Bobo logged an additional 124.5 hours. Some of these hours were duplicated, in the sense that both Mr. Bobo and Mr. Merkel were present at the trial held in Crowley, Louisiana, and there has been objection on that score. No objections were interposed to the expenses claimed by these attorneys.

█ The Court of Appeals for the Fifth Circuit, in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974), set forth twelve criteria to be used in determining what constitutes a reasonable fee for attorneys in cases in this Circuit. The criteria listed in the *Johnson* case have been used in a number of cases decided since that time, and were held to be applicable to a bankruptcy case in *In re First Colonial Corp. of America* (C.A.5), 544 F.2d 1291, cert. denied 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388. These decisions have made it mandatory that, in awarding "a reasonable attorney's fee", the court must consider and discuss the applicability to the case before it of each of the twelve criteria, and the weight to be given to each of them. *In re Foster Iron Works, Inc.*, (D.C.S.D.Tex., 1980) 3 B.R. 715. Every criterion is not necessarily applicable to every case, but all of them must be considered. We will set forth the criteria one by one and discuss how each of them has been weighed in reaching a decision on the amount of the fee to be awarded.[1]

### 1. *Time and labor required.*

As stated above, Mr. Merkel has spent 221 hours of his time and Mr. Bobo has spent 124½ hours. While the attorneys for the various objecting creditors have "pooh-poohed" the consideration of much of the time spent by Mr. Bobo on the theory that it was a duplication of time being spent by Mr. Merkel, the Court is of the opinion that in this case the time which Mr. Bobo spent assisting Mr. Merkel in the preparation and actual trial of the case was necessary and that the criticism that his efforts were a mere duplication of time is not justified under the circumstances. Mr. Merkel clearly needed the help of junior counsel in trying a fairly long case in a court many miles from his home base. Furthermore, in view of the doubtfulness that any fee whatever would have been received by these attorneys except from money actually recovered for the debtor, of which more later, the Court is of the opinion that the time criterion is not one that should be given too much limiting effect.

### 2. *Novelty and difficulty.*

The issues in the case tried in Louisiana were for the most part issues common to cases involving products liability. There was not much in the way of novelty in this case. However, the case was at least moderately difficult in that (1) the attorneys had to become familiar with Louisiana law concepts and terminology; (2) the attorneys had to become familiar with the technical engineering questions involved so as to be able to adequately present the evidence furnished by expert witnesses and to cross-examine experts on the other side; and (3) had to try a case in a foreign jurisdiction before a judge who was a stranger to them and to whom they were strangers.

---

1. In doing so we have tried to bear in mind the recent admonition of the Fifth Circuit that we must not only discuss, but must *apply* the various factors and explain *how* our interpretation of the factors led to our conclusion. See *In re U.S. Golf Corp.*, (C.A.5, 1981) 639 F.2d 1197, 1206.

3. *Skill required.*

The brief in opposition to the allowance of the fee asked for by the debtor's attorneys concedes that Mr. Merkel enjoys a high professional reputation. Furthermore, the results speak for themselves. The Court is persuaded that the debtor's attorneys have exhibited a high degree of skill in their handling of this case.

4. *Preclusion of other employment.*

There is no evidence to show that the representation of the debtor resulted in any preclusion of employment by virtue of ethical rules. In other words, there is no evidence that other business was offered to the attorneys which had to be turned down because of a conflict of interest. However, the employment was authorized in the latter part of February and the trial had been set for the latter part of April which meant that the case had to be prepared and pretrial procedures conducted promptly, and many days spent out of the attorneys' home state, which could well have resulted in their being unavailable for other business for a period. A further discussion of this item will be found in the discussion of criterion number 7.

5. *Customary fee.*

On a strictly hourly basis, the "customary fees" suggested by the brief of the opposing creditors are not out of line. On a contingent basis, however, a fee of 40% if the case were to be disposed of before trial and 50% if the case went to trial could easily be sustained. The matter of a fixed or contingent fee is discussed further in the next paragraph.

6. *Whether the fee were fixed or contingent.*

The court did not fix the fee at the time the employment of the attorneys was authorized. The employment order said that the fee would be fixed by the court at a later time. At that time no plan was proposed. The court knew and the debtor knew and the attorneys knew that actual payment of any fee would be unlikely unless a recovery were made.

7. *Time limitations imposed by the client or other circumstances.*

The order authorizing employment was entered on February 25, 1980. At that time the trial was set for April. It was later continued to June but that was on application of one of the other parties to the suit. The trial concluded on June 19. In that four month period there were some 18 days on which more than an ordinary number of hours was spent on the case by the attorneys involved. There are three instances of three successive days on each of which Mr. Merkel devoted his entire time to the case, and much of that time he was in Louisiana, and consequently not able to attend to other business, so it is possible and indeed likely that there was in these periods some loss of other business (though there is no specific testimony to such loss), and some consideration should be given to this factor, although no great weight need be attached to it.

8. *Amount involved and results obtained.*

Both of these are involved in the fee requested by the attorneys, since they are asking for a percentage of what they deem to be the total amount recovered, whereas the objecting creditors want the court to allow a fee purely on the basis of hours spent on the case, although they are willing to give them double the hourly rate. With respect to this factor, I find that the amount involved was indeed substantial and the results obtained can only be described as highly successful. However, I cannot agree with the debtor's attorneys' computation of the amount recovered. The debtor received $310,000.00 in cash and the return of equipment valued at $39,155.00; a total of $349,155.00. In addition, claims of Dick Johnson Grain Company against Belk in the amount of $123,519.77 and claims of Hunter Manufacturing, Inc. against Belk in the amount of $55,126.00 were cancelled and released. Adding these claims to cash and property actually recovered by Belk, the

debtor's attorneys claim a total recovery of $527,877.77. It is possible that the debtor and its general creditors may have benefited to some extent by the cancellation of these claims but I cannot find that the debtor and its creditors have benefited to the extent of $178,645.77. There is just no proof in the record as to the nature and validity of these claims and I cannot regard their cancellation as being equivalent to the deposit of an equal amount of money in the debtor's bank account. I find, for the purposes of this criterion, that the amount recovered for the debtor was $349,155.00.

### 9. The experience, reputation, and ability of the attorneys.

These factors are conceded even by the creditors objecting to the size of the fee. Success speaks for itself and the experience and reputation of lead counsel, Charles Merkel, are well known to the court and bar.

### 10. The "undesirability" of the case.

This case did not involve representing an unpopular cause, or an obnoxious or disreputable client. It was therefore not "undesirable" in that sense. Taking the case, however, did involve representing a client that was in financial distress. That in turn meant that it was extremely unlikely that a fee could be received or expenses recovered unless the attorneys' services could result in dollars being recovered by the debtor, and even then, the fee and expenses would be at the mercy of the court and subject to opposition of the creditors. Only the possibility of a fee substantially greater than could be earned on the ordinary noncontingent-time-spent-in court basis could make this case less than "undesirable".

### 11. The nature and length of the professional relationship of the client.

I am unable to see that this factor needs consideration in determining the amount of fee to be awarded.

### 12. Awards in similar cases.

The parties have not referred the court to cases other than Lindy Bros. I, 487 F.2d 161, 3rd Cir., and Lindy Bros. II, 540 F.2d 102, 3rd Cir., which I find not very helpful in determining a fee in this case. In this court's experience, the normal contingent fee arrangement where the case actually goes to trial is one-third to 40% of the recovery, and occasionally will go as high as 50%. The debtor's attorneys here are asking for 25%, which I find to be a modest demand if the fee is to be regarded as a contingent one.

Reviewing all of the above considerations and applying them to the evidence produced and the arguments of counsel, I have concluded that the attorneys for the debtor should be considered as having worked in this matter on a contingent basis and I find that a fee of 25% of the amount of money and property recovered by the debtor as a result of these services will be reasonable compensation to the attorneys for their services in the lawsuit which they were employed to conduct on the debtor's behalf. I therefore fix the amount of the fee of the attorneys at $87,288.75. The attorneys have not indicated to the court how that fee is to be divided between them and the court will give no direction in that regard, leaving that to the agreement of the attorneys between themselves. In addition, the two law firms to whom the above award has been made, assumed responsibility for payment of all services which had been rendered in the case by Timothy J. McNamara of the firm of Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell of Lafayette, Louisiana, whose total charges come to $6,632.57 for 79.16 hours of work. I find that this is a reasonable and necessary expense incurred by the debtor's attorneys, and direct that this amount be paid to the attorneys in addition to the amount awarded them for their own fees.

The debtor's attorneys have also incurred out-of-pocket expenses in the prosecution of the Louisiana case in the amount of $4,181.11 and are responsible for additional expert witness fees in the amount of

$3,447.44. The Court finds that these were necessary and reasonable expenses and will direct that the same be paid to the attorneys by the debtor.